## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

ASHLEY SHANTORIA BURNETT                       **PLAINTIFF**

VS.                           **CIVIL ACTION NO. 3:24-CV293-MPM-JMV**

ASHLEY FURNITURE INDUSTRIES                **DEFENDANT**

## ORDER

This cause comes before the court on the motion of defendant Ashley Furniture Industries for summary judgment, pursuant to Fed. R. Civ. P. 56. The *pro se* plaintiff Ashley Shantoria Burnett has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

This is a sex harassment, retaliation, wrongful termination and discrimination case, in which plaintiff seeks recovery under Title VII based on events which arose after she allegedly suffered, and reported to management, sexual harassment at the hands of her supervisor. Defendant AFI operates a furniture manufacturing facility and distribution center in Ecru, MS, where it employed plaintiff as a laborer in its upholstery department beginning in August 2023. [Plaintiff's depo at 44-45, 62-64]. The alleged harassment in this case involved a September 20, 2023 incident in which Christopher Howell, who was responsible for overseeing the training line to which Burnett was assigned, told her that her "body was flirting with him" and thereafter approached her from behind and touched her buttocks. In her deposition, plaintiff testified that the unwanted touching lasted for a period of time which she described as being "somewhat quick[]" but still "a good little minute," though she was unable to give a precise estimate of its duration. [Depo. at 90].

1

Plaintiff testified that she regarded the unwanted touching as sufficiently distressing that she left work early that day, and she reported the incident to management soon thereafter. [Depo. at 84]. Following her report, plaintiff was assigned to a different production line, but she alleges that her new work duties were considerably more onerous than her old ones, a fact which she attributes to retaliation for her having reported harassment. [Depo. at 140]. For its part, defendant notes that it suspended Howell's employment pending an investigation [Roncali affidavit at 2], and it further describes some of the actions which it took in light of plaintiff's report of harassment as follows:

> While AFI ultimately could not substantiate Plaintiff's report, it nevertheless warned Mr. Howell that the conduct in which Plaintiff claimed he had engaged was inappropriate and would not be tolerated and required Mr. Howell to complete additional anti-harassment and workplace violence training. (Plaintiff Dep. I at 132:10–21; Roncalli Decl. at ¶ 8). Shortly after Mr. Howell returned to work, AFI moved Plaintiff to a new assembly line and away from Mr. Howell's line. (Plaintiff Dep. I at 145:4-20).
> While Plaintiff worked with Mr. Howell only very briefly following Mr. Howell's return to work (during which time she did not complain of additional harassment), she claims Mr. Howell asked her to put brackets on both sides of the couch (rather than just one side) in retaliation for her report of harassment. (Plaintiff Dep. I at 138:25–139:8).

[Brief at 3].

This is merely a portion of the extensive evidence relating to plaintiff's retaliation claim, but it is clear that the parties have very differing versions of the facts relating to that claim. Plaintiff alleges, for example, that she developed carpal tunnel syndrome and other workplace-related injuries as a result of her increased duties, and she contends that these injuries, as well as the termination she eventually received, were the result of unlawful retaliation. [Plaintiff's brief at 2]. Defendant, by contrast, alleges that there was no causal connection between plaintiff's work duties and her report of harassment, and it notes that plaintiff herself indicated that she was unable to work due to her medical issues. [Brief at 6]. Whatever the reason for plaintiff's termination, it is plain that these events occurred soon after her September 20, 2023 report of

2

harassment. Indeed, plaintiff alleges that her increased work duties began on October 9, 2023 and that she learned of her termination on December 4, 2023. [Amended EEOC charge at 2].

With these facts in mind, this court will address defendant's motion for summary judgment, and, in doing so, it is cognizant of the fact that this case is set for a non-jury trial in which it will be serving as the finder of fact. [Docket entry 64]. Before addressing the substantive merits of plaintiff's sexual harassment claim, this court first considers defendant's argument that a charge of harassment was not filed with the EEOC within the 180-day period provided by law. In so arguing, defendant writes in its brief that:

> In Mississippi, a "non-deferral" state, an employee wishing to contest alleged violations of Title VII must file a charge of discrimination with the Equal Employment Opportunity Commission within 180 days of the alleged discriminatory or retaliatory actions. *See* 42 U.S.C. § 2000e-5(e); *see also Harding v. Huntington Ingalls Indus.*, No. 1:15-CV-274-LG-RHW, 2015 WL 6812242, at *2 (S.D. Miss. Nov. 5, 2015) (citing source omitted). Any claim based on alleged violations that occurred more than 180 days prior to the filing of a charge is time-barred and subject to dismissal. *See Clark v. Chickasaw Cnty., Miss.*, 2010 WL 3724301, *6 (N.D. Miss. Sept. 16, 2010). Here, Plaintiff failed to timely file a charge asserting a claim for harassment for which she seeks relief in this action. While Plaintiff's Charge of Discrimination filed with the EEOC need not state each and every fact related to her alleged claims, Plaintiff's allegations must "be sufficient to put an investigator on notice of her claims." *Id.* at *10 (citing *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 879 (5th Cir. 2003)). The undisputed record evidence establishes that Plaintiff failed to file a Charge with the EEOC alleging sex harassment (or any fact sufficient to put an investigator or AFI on notice of a sex harassment claim) prior to May 15, 2024, which was 247 days after she claims the harassment occurred. (SOF at ¶¶ 34–35). As a result, Plaintiff's sex harassment claim is time-barred and AFI is entitled to judgment on the harassment claim for that reason.

[Brief at 8-9].

Plaintiff has responded to defendant's statute of limitations argument with what this court regards as quite strong evidence that she informed the EEOC of her desire to assert a sexual harassment claim well within the 180-day period and that the omission of that claim in the original charge of discrimination was the result of an error by that agency. Specifically, plaintiff writes in her brief that:

3

> Defendant claims that I failed to assert my sexual harassment claim with the EEOC in a timely manner. However, in the provided EEOC forms and documented emails, my sexual harassment claim was omitted in error, not by me, but by the EEOC Agent entering the information. This was immediately fixed upon discovery, which is all documented.

[Brief at 2].

In support of this argument, plaintiff has attached a February 20, 2024 email which she sent to EEOC employee Antuan Willis-Martin, setting forth her factual allegations against defendant. [Plaintiff's exhibit at 15]. In the court's view, this email strongly supports plaintiff's contention that she timely informed the EEOC of her wish to file a sexual harassment claim against defendant and that it was primarily that agency's mistake, and not hers, which resulted in her original EEOC claim being limited to a retaliation claim with no mention of sexual harassment. In so stating, this court notes that the very first allegation in plaintiff's email is one asserting that "I was sexually harassed by Christopher Howell (supervisor) he touch [sic] my behind." *Id.* at 15.

It is unclear to this court why Willis-Martin failed to include this allegation in the original EEOC charge which he prepared that same day, but it concludes that these circumstances support a finding that plaintiff filed a timely charge of sexual harassment within the meaning of U.S. Supreme Court and Fifth Circuit precedent. In so stating, this court notes that the U.S. Supreme Court has long held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *see also Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 82, 130 S.Ct. 584, 175 L.Ed.2d 428 (2009). ("[W]e have held nonjurisdictional and forfeitable the provision in Title VII ... requiring

4

complainants to file a timely charge of discrimination with the [EEOC] before proceeding to court.").

Similarly, the Fifth Circuit has made it clear that "[c]onsistent with the remedial purposes underlying Title VII, we construe employment discrimination charges with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading." *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 77 (5th Cir. 1982). *See also Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). In a similar vein, the Fifth Circuit has observed that:

> When analyzing whether a plaintiff has exhausted a claim, this Court has noted that "the scope of an EEOC complaint should be construed liberally." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). "On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Id*. at 788–89. In light of these considerations, we interpret "what is properly embraced in review of a Title–VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 789.

*Melgar v. T.B. Butler Publ'g Co., Inc.,* 931 F.3d 375, 379 (5th Cir. 2019).

Based upon this authority, this court has little difficulty in concluding that, given that the EEOC was plainly provided with plaintiff's specific allegations of sexual harassment within the relevant 180-day limitations period, it could have been reasonably expected that a sexual harassment claim would have grown out of the agency's investigation of her allegations. This is true even if this court accepts defendant's argument that plaintiff shares some of the blame for signing the original charge of discrimination which had been prepared by the EEOC. In so stating, this court notes that, in its reply brief, defendant does not cite, much less discuss, any of the authority quoted above, such as the Fifth Circuit's admonition that ""[c]onsistent with the remedial purposes underlying Title VII, we construe employment discrimination charges with

the 'utmost liberality,' bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading." *Price*, 687 F.2d at 77.

In its reply brief, defendant relies instead upon what this court regards as a rather technical argument that it should disregard plaintiff's evidence of her email to Willis-Martin since it was not disclosed in discovery. [Reply brief at 2, footnote 1]. This court believes, however, that plaintiff's proof is properly regarded as rebuttal evidence which she produced to counter defendant's argument that she had failed to timely assert a sexual harassment claim. Moreover, it is well settled that courts should show leniency to *pro se* litigants such as plaintiff, who appears to have made good faith efforts to prosecute her claims, in spite of her lack of legal expertise. That aside, this court regards litigation as a search for the truth, and, in this case, the truth is that plaintiff made her allegations of sexual harassment very clear to the EEOC within the 180-day limitations period, but for whatever reason, that agency seems to have dropped the ball in omitting a sexual harassment claim from her original charge. Moreover, this court reiterates that, even though plaintiff may share some of the blame in this context for signing the original charge, it seems clear that, given the information before the EEOC, a sexual harassment claim would have inevitably grown out of the agency's investigation of her allegations, within the meaning of *Melgar* and similar precedent. This court therefore concludes that plaintiff's sexual harassment claim was timely filed in this case, within the meaning of the above-cited authority.

Having addressed defendant's procedural objection, this court now turns to the substantive merits of plaintiff's sexual harassment claim. In arguing that plaintiff's proof of harassment is insufficient to support recovery under Title VII, defendant argues that, even assuming that her sexual harassment claim was timely filed, the alleged harassment in this case

was neither "severe" nor "pervasive" so as to support recovery under relevant Title VII standards. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S. Ct. 2399, 91 L.Ed.2d 49 (1986), (setting forth "severe or pervasive" requirement in sexual harassment cases). Specifically, defendant argues that:

> In this case, Plaintiff cannot establish that the "harassment" about which she complains was sufficiently severe or pervasive to give rise to an actionable claim. Her claim is premised upon a single incident involving a comment about Plaintiff's body and a brief touch to Plaintiff's "butt." (SOF at ¶¶ 4–6). Plaintiff concedes these allegations supporting her claim occurred very quickly. (SOF at ¶ 6). A single touch and one comment about Plaintiff's body clearly are not sufficiently severe.

[Brief at 10].

In considering these issues, this court emphasizes at the outset that it is well aware that this is not a "big" sexual harassment case, in the sense of allegations of the sort of sustained egregious harassment which might support a large damages verdict. But the extent of damages is not at issue in this motion. At issue here is whether this court must instruct plaintiff that she should go on her way and bother it no further, since what she allegedly experienced was, essentially, a trivial matter which is too insignificant to even warrant its attention at a trial. This court is very reluctant to so instruct plaintiff, for several reasons.

First, considering the evidence in the light most favorable to plaintiff, this court believes that defendant's above description of the evidence is rather questionable. In so stating, this court notes that, while it only has before it defendant's chosen excerpts of plaintiff's deposition, even that limited selection casts doubt upon defendant's suggestion that the touching of plaintiff's buttocks was "momentary" and of little significance. Specifically, plaintiff testified in her deposition that:

Q. Okay. And for how long did he make contact with your butt?
A. He stood behind me the whole time, like, now what are you going to do?

7

Q. Well, that's not my question, though. For how long did he make contact with your butt? How long was he actually touching you?
A. It was for a good little minute until -- 'cause at first I thought, well, maybe he's walking past me. No. He wasn't.
Q. Well, when you say 'a good little minute', do you have an estimate?
A. No, sir, I don't have an estimate.
Q. Did you just -- A. I mean, I -- it was -- at that point in time so it was, like, everything happening.
Q. Very quickly?
A. Somewhat. Yes, sir.

[Depo. at 90].

It thus appears that, while counsel for defendant was trying to get plaintiff to agree that the touching was over very quickly, she maintained that it lasted for a "good little minute" and was only "somewhat" quick. Moreover, this court believes that the context of the touching should have made it clear to any employee that this was not simply an accidental or incidental touching, but was, rather a deliberate groping of a sexual nature. Specifically, plaintiff testified that, shortly before the touching, Howell made the following remarks:

Q. All right. And so he told you that your body was flirting with him and talking sexual?
A. Yes.
Q. Okay. And you said you just ignored that?
A. Yes.
Q. Okay. Were you offended by that or?
A. Yes. I was offended by it.

[Depo. at 120].

Accepting plaintiff's version of events as accurate, this court believes that, regardless how many seconds Howell's unwanted touching may have lasted, the key point is that, given the remarks he had just made, it was clearly intended as a sexual approach towards plaintiff. Indeed, this court regards Howell's *intent* as the key consideration in this context, and not the duration of the groping. This is because, by approaching plaintiff in such a blatantly inappropriate manner, plaintiff instantly became aware that her new job would not merely entail an evaluation of her

8

work by her supervisor, but would also likely involve her having to fight off his unwanted sexual advances and, potentially, that she would suffer some form of retaliation if she rejected them. Thus, even if Howell's touching was only of momentary duration, plaintiff had every reason to fear that the consequences of his actions would linger throughout her entire tenure at the company. This court believes that such a possibility would be distressing – *severely* so – to any reasonable employee.

Indeed, plaintiff's deposition makes it clear that she personally found Howell's sexual touching to be deeply offensive, so much so that she found it necessary to leave work early for the day. Specifically, plaintiff testified that:

> A: Uh, we had started back up. Had just started working. He comes behind me, touches me. I turn around. We have a eye contact. I panic and just my side, it's, like, I need -- I need some air.
> Go to my car. End up going to the smoke area. I was, like, I just need to calm down and just calm down. I ended up meeting a young lady in the smoke area named Rebecca Moss. End up talking to her about the situation. She was telling me that she went through the same thing with, um, Christopher Howell.
> She was, like, just go ahead, clock out, go home and talk to, um, Scott Chapman the next morning. So I did just that. She was, like, she was going to talk to him as well. So I go in. I tell Christopher Howell that I'm going home. He's, like, well, Why? What for? And I said, I'm just going home.
> I said, You know what you did, and he was, like, Pray for me, this and that and I left. I went home. About 7:00 o'clock I went to talk to, uh, Scott Chapman about it.

[Depo. at 84].

As discussed below, this court finds plaintiff's allegation that Moss told her that Howell had treated her in a similar manner to be potentially relevant to other legal issues in this case, even though it does not appear to be relevant in determining the severity of the harassment which plaintiff allegedly suffered at his hands. As to this severity issue, defendant describes its understanding of the law in this context as follows:

> Where, as here, the alleged harassment did not itself result in tangible employment action, Plaintiff can prevail on her harassment claim by establishing that (1)

she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) such harassment was based on her sex; (4) the harassment "affected a term, condition, or privilege of employment" (i.e. it was sufficiently severe or pervasive); and (5) AFI knew of the harassment but failed to take prompt remedial action. *Sutton v. Ports America Louisiana, LLC*, No. CV 24-2523, 2025 WL 3113850, at *5 (E.D. La. Nov. 6, 2025) (quoting *Wantou v. Wal-Mart Stores Tex., LLC*, 23 F.4th 422, 433 (5th Cir. 2022)). Plaintiff cannot do so in this case.4

"Not all workplace conduct that may be described as harassment affects a 'term, condition, or privilege of employment." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotations omitted). A hostile work environment exists when the "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (cleaned up). The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998**). Indeed, the reason for the "severe or pervasive" requirement is to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender related jokes, and occasional teasing." *Id.***

To determine whether the plaintiff's work environment was objectively offensive, courts consider the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) **whether it is physically threatening or humiliating, or a mere offensive utterance;** and (4) whether it unreasonably interferes with an employee's work performance. *See Harris*, 510 U.S. at 23. "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

[Brief at 9-10] (emphasis added).

This court has highlighted certain portions of defendant's argument to emphasize that, even under its understanding of the law, conduct which crosses the line into being "physically humiliating" is properly regarded as being more severe than simple verbal harassment, such as "sporadic use of abusive language, gender related jokes, and occasional teasing." *Id.* Moreover, this court regards it as significant that, in its brief, defendant does not cite a single published Fifth Circuit or U.S. Supreme Court decision supporting its argument that physical touching, combined with a sexual remark, is insufficient to constitute "severe" harassment. It is unsurprising that, as a *pro se* litigant, plaintiff has failed to offer her own authority in this

10

context, but this court's own research revealed a published Fifth Circuit decision in which that court held that a sexual remark, alongside the touching of an employee's buttocks area, was sufficient proof of "severe" sexual harassment to survive summary judgment.

Specifically, in the 2002 decision of *La Day v. Catalyst Tech., Inc.*, the Fifth Circuit wrote that:

> Craft and Catalyst argue that even if there is evidence that Craft is a homosexual, summary judgment should be granted because there is no proof that Craft made sexual overtures to La Day. Nonetheless, if the evidence is viewed in the light most favorable to La Day, it is reasonable to conclude that Craft's touching of La Day's anus, and his earlier expressed jealousy toward La Day's girlfriend, constituted "explicit or implicit proposals of sexual activity." *Oncale,* 523 U.S. at 80, 118 S.Ct. 998. Accordingly, there is sufficient proof of Craft's homosexuality for La Day's harassment claim to survive summary judgment.

*La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 481 (5th Cir. 2002). In reaching this decision, the Fifth Circuit emphasized that:

> The present case falls somewhere in between *Shepherd* and *Rene.* Craft's possible sexual interest in La Day was not as ongoing and extensive as was that of the alleged harasser in *Shepherd.* Unlike the harasser in *Shepherd,* Craft did not explicitly state his desire to have sexual relations with the victim, nor did he make anywhere near as many physical gestures suggesting such interest. He did, however, touch La Day in a sexual manner, while the harasser in *Shepherd* did not touch the plaintiff.

*La Day,* 302 F.3d at 479.

This court regards *La Day* as quite helpful authority for plaintiff in this case, since that decision, like this case, involved a single touching of a sexual nature combined with a single remark which indicated sexual desire towards the plaintiff.[1] This court notes that the *La Day* panel cited the U.S. Supreme Court's decision in *Oncale* in support of its holding, and the Court

---

[1] This court notes that *La Day* also included an allegation that the supervisor had "spat tobacco juice" on the plaintiff after he reported his harassment, but this was clearly evidence of retaliation (and not sexual harassment) and was treated by the Fifth Circuit as such. *La Day,* 302 F.3d at 476.

11

wrote in that case that "[c]ourts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity." *Oncale*, 523 U.S. at 80. The Supreme Court thus cited "explicit or implicit proposals of sexual activity" as being the rather prototypical proof of sexual harassment sufficient to establish a Title VII harassment claim, and it is difficult for this court to interpret Howell's alleged statement that plaintiff's "body [was] flirting with him" followed by his allegedly grabbing her buttocks as anything other than an implicit proposal of sexual activity.

In so stating, this court recognizes that this issue is one regarding which federal judges have differed, and, in its brief, defendant has cited non-binding district court and other precedent which have found a single incident of unwanted touching to be insufficiently severe. *See, e.g. Hockman v. Westward Commc'ns, L.L.C.*, 282 F. Supp. 2d 512, 516 (E.D. Tex. 2003). While this court respects its fellow judges who see these issues differently, it has serious concerns regarding both the real-world and legal effects of agreeing with defendant's position in this case, for reasons which it will presently explain. In doing so, this court reiterates that the issue here is not whether this is a "big" sexual harassment case (it is not), but, rather, whether it should be regarded as a potentially viable harassment case at all. This court concludes that it should, for multiple reasons.

First of all, this court must wonder why, if it were to side with defendant on this issue, this would not serve as a judicial license for supervisors to engage in "one free grope" of an employee without facing liability under Title VII. As best this court can tell, a rule of law that a single intentional touching, with sexual intent, of an employee's breasts, genitals or buttocks is insufficient to support a sexual harassment claim would give comfort to would-be sexual

12

harassers that so long as they limited their groping to one per employee, they could thereby ascertain which employees were receptive to their sexual bullying and which were not. In so stating, this court notes that, in this day and age, legal research can be as quick and easy as a simple query on an online AI website. That being the case, it strikes this court as quite realistic that a supervisor who is desirous of making unwanted sexual advances on an employee would ask ChatGPT or some other such program about the legal consequences of doing so. This court can discern no good reason why the answer to that query should be that, so long as the supervisor limits his groping of the employee's breast, genitals or buttocks to a single occasion, he need fear no liability for sexual harassment under Title VII.

This court further submits that a rule of law permitting supervisors to engage in "one free grope" of an employee would put employees who wish to assert a sexual harassment claim in an untenable position, legally-speaking. In so stating, this court notes that U.S. Supreme Court standards applicable to sexual harassment claims against supervisors make it clear that an employee's failure to promptly report acts of sexual harassment to her employer may threaten her ability to hold it vicariously liable for such conduct. *Faragher v. Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998).

As discussed in detail below, the so-called *Faragher-Ellerth* defense incentivizes early reporting of harassment by providing that, if the employee provides such early notice, then her employer may be held vicariously liable for acts of sexual harassment by supervisors, even if it acted reasonably to prevent and correct such harassment. *Ellerth,* 524 U.S., at 765. This court submits that, given the requirements of the *Faragher-Ellerth* defense, the recognition of a "one free grope" rule would place employees wishing to assert a sexual harassment claim in a legal

13

Catch 22 whereby their claims might well be barred no matter how they proceeded. Indeed, if such a rule were adopted, an employee who did exactly what *Faragher-Ellerth* requires would be confronted with a rule which precluded her from filing a Title VII claim simply because she had – quite correctly – reported the harassment before it occurred a second time.

By the same token, the recognition of a "one free grope" rule would seemingly provide employees with perverse incentives to sit back and wait to see if additional acts of harassment occurred, so as to render the harassment sufficiently "severe or pervasive" to support recovery. And yet an employee who chose to do so would then be confronted with *Faragher-Ellerth*'s requirement that she have promptly reported acts of harassment to her employer in order to establish vicarious liability on its part. This would seemingly create a "heads I win, tails you lose" scenario for employers, and this court cannot imagine that the same U.S. Supreme Court which adopted the *Faragher-Ellerth* standard in the first place would permit such perverse legal incentives and contradictions to exist.

In light of the foregoing, this court believes that it is implicit within the *Faragher-Ellerth* framework that a single act of harassment may suffice to support a Title VII claim by a supervisor. This court regards this as entirely appropriate, since individuals who have been entrusted to serve as supervisors should know better than to abuse their authority by seeking sexual favors from those under their command. This court frankly has little sympathy for those supervisors who choose to do so anyway. In a similar vein, this court believes that *Faragher-Ellerth* quite properly incentivizes employers to take sufficient care in hiring and training their supervisors to ensure that they do not commit acts of sexual harassment in the first place. Indeed, in cases where employees act properly in taking advantage of the reporting procedures

14

available to them, this court can discern no unfairness in holding employers vicariously liable for the harm inflicted by their supervisors.

These legal considerations aside, this court believes that, on a human level, adopting a "one free grope" rule would serve to diminish the real-life consequences of even a single groping by a supervisor and would be insulting to employees who simply wish to be judged on their merits. In so stating, this court emphasizes that virtually all individuals enter an employment relationship with the expectation that they will be treated with respect and dignity and that they will be judged by their supervisors based on their work performance. That all goes out the window once an employee is subjected to the sort of physical groping by a supervisor, with clear sexual intent, which plaintiff alleges occurred in this case. Once that occurs, the employee is suddenly aware that she is viewed by her supervisor as a sexual object, and she must wonder whether her rejection of his advances will prevent further such incidents or whether she will be subjected to some form of retaliation for rejecting his advances. Such an employee will likewise face concerns regarding whether she should "make waves" by reporting the harassment to her employer, and whether her career path might be jeopardized by doing so.

Under these circumstances, it is unclear to this court why even a single groping by a supervisor, with clear sexual intent, should be regarded as insufficient, as a matter of law, to support recovery under Title VII. To those who disagree, this court must ask: would you be content to have *your* paycheck and *your* career threatened by the sexual appetites of your supervisor? This court submits that virtually everyone would answer "no" to this question, and, that being the case, it does not believe that one should be so hasty to diminish the significance of even a single sexual advance, including unwanted physical touching, by a supervisor. Because ultimately, the severity of such misconduct lies not only in the physical revulsion resulting from

15

an unwanted touching of private body parts (real though that may be), but also the victim's awareness of the threat that such conduct poses to her ability to make a living. And while the unwanted touching itself may have only lasted for seconds, the distress and worry caused to a completely innocent employee will, inevitably, last much longer. This court submits that this is the context in which one should evaluate the "severity" of even a single incident of an unwanted sexual advance and touching by a supervisor.

Having said that, this court does agree with defendant that some sexual harassment cases are more serious than others, and it regards the allegations of harassment in this case to be considerably less egregious than certain other sexual harassment cases which it has encountered. This court's conclusion in this regard will likely inform its award of any damages in this case, in the event that it finds plaintiff's proof of harassment at trial to be credible and worthy of some recovery. Still, this court is not prepared to agree with defendant's suggestion that the conduct described above should be regarded as, essentially, a *de minimis* matter which is too trivial to even deserve a trier of fact's attention.

At the same time, this court does acknowledge that a review of Fifth Circuit sexual harassment case law makes it clear that there are certain judges on that court who are considerably more skeptical of sexual harassment claims than others. Thus, while defendant's brief has cited only district court cases and an unpublished Fifth Circuit decision, this court does not dispute that there are some Fifth Circuit decisions which have taken a more stringent approach towards sexual harassment claims than others and which might well have regarded the harassment which plaintiff allegedly suffered in this case to be insufficiently severe to support recovery. At the same time, there are also published Fifth Circuit cases such as *La Day* which seem much more receptive to sexual harassment claims and which have found triable fact issues

16

based on proof very similar to that here. As such, this court does not regard Fifth Circuit Title VII precedent as constituting a bar to plaintiff's case, based on the severity of the harassment alleged. Perhaps more importantly, this court believes that defendant's position on this issue is implicitly rejected by *Faragher-Ellerth* and other U.S. Supreme Court sexual harassment precedent, as explained in greater detail elsewhere in this order. Needless to say, this Supreme Court precedent is binding authority in this case.

This court now turns to defendant's third and final defense to plaintiff's sexual harassment claim. That defense is that, even assuming that plaintiff timely asserted a charge of sexual harassment, and even assuming further that the alleged harassment in this case was sufficiently "severe" to support a Title VII claim, defendant is still entitled to dismissal based upon the reasonableness of its reaction to plaintiff's report of harassment. Specifically, defendant writes in its brief that:

> Even assuming the conduct in question was sufficiently severe or pervasive to give rise to an actionable harassment claim (it was not), Plaintiff concedes that following her report of the alleged harassment, AFI took prompt and effective remedial action. When an employer exercises reasonable care to promptly correct harassment, the employer is entitled to a safe harbor from liability. *Moye v. Tregre*, No. 22-30341, 2024 WL 65424, at *2 (5th Cir. Jan. 5, 2024); (quoting *Hudson v. Lincare, Inc.*, 58 F.4th 222, 230 (5th Cir. 2023)) ("An employer is not liable for workplace harassment under Title VII when it takes 'prompt remedial action that is reasonably calculated to end the harassment'"); *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 329–30 (5th Cir. 2009) (granting summary judgment on harassment claim because defendant reprimanded alleged harasser and reassigned complaining employee).
> Here, AFI immediately suspended Mr. Howell and investigated Plaintiff's complaint. It thereafter reassigned Plaintiff to work on a training line over which Mr. Howell was not responsible and Plaintiff admittedly was not subjected to any other offensive conduct based on her sex at any point thereafter. (SOF at ¶¶ 5, 7–10). As such, AFI's intervention succeeded in preventing any further alleged harassment. *See Stewart*, 586 F.3d at 329–30; *Moye*, 2024 WL 65424, at *2 (affirming summary judgment because employer acted quickly to take "remedial measures and the harassment ceased") (quoting source omitted). Inasmuch as Plaintiff may argue Mr. Howell made her perform additional work, she concedes that Mr. Howell simply relied on her to pick up the slack because one of her coworkers was unproductive. (SOF at ¶¶ 11–12).

17

> Therefore, because the alleged harassment was not sufficiently severe or pervasive to give rise to an actionable claim and AFI took immediate and effective remedial action following Plaintiff's complaint, AFI is entitled to judgment in its favor on Plaintiff's harassment claim.

[Brief at 11-12].

It seems clear that defendant's argument that it reacted reasonably to plaintiff's report of harassment is couched in terms of a negligence standard. In so arguing, defendant must confront the fact that Title VII law is clear that employers only face a negligence standard in cases of harassment by a *co-worker,* not a supervisor. In cases of sexual harassment by a supervisor, an employer's liability is, once again, judged by the standards set forth by the U.S. Supreme Court in *Faragher-Ellerth.* The U.S. Supreme Court has described the law in this context as follows:

> Under Title VII, an employer's liability for such harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply.
> If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. *Id.,* at 807, 118 S.Ct. 2275; *Ellerth, supra,* at 765, 118 S.Ct. 2257. Under this framework, therefore, it matters whether a harasser is a "supervisor" or simply a co-worker.

*Vance v. Ball State Univ.,* 570 U.S. 421, 424, 133 S. Ct. 2434, 2439 (2013). This court notes that, in *Vance*, the Supreme Court held that an employee counts as a "supervisor" for purposes of vicarious liability under Title VII "if he or she is empowered by the employer to take tangible employment actions against the victim." *Id.*

In its summary judgment briefing in this case, defendant never disputes plaintiff's assertion that Howell was her "supervisor" within the meaning of *Vance*, indeed, it avoids the issue entirely. Defendant does assert that Howell was "responsible for overseeing the training

18

line to which Ms. Burnett was assigned," [brief at 2], but this does not answer the question whether he was "empowered by the employer to take tangible employment actions against the victim" so as to render him plaintiff's "supervisor" within the meaning of *Vance.* Moreover, defendant makes no mention at all of the two-part *Faragher-Ellerth* affirmative defense in its brief, for reasons which are unclear to this court. This rather glaring omission in defendant's briefing makes this court suspect that it is aware that, since plaintiff timely reported the harassment in this case, it would be unable to establish the second part of the *Faragher-Ellerth* affirmative defense and would therefore be better off ignoring the issue altogether.

If this court assumes that Howell was, in fact, plaintiff's supervisor for the purposes of Title VII vicarious liability, then *Vance* is quite clear regarding the impact of this fact under *Faragher-Ellerth.* Specifically, the court wrote that:

> *Ellerth* and *Faragher* held that, even when a supervisor's harassment does not culminate in a tangible employment action, the employer can be vicariously liable for the supervisor's creation of a hostile work environment if the employer is unable to establish an affirmative defense. We began by noting that "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character, and in this sense, a supervisor always is aided by the agency relation." *Ellerth, supra,* at 763, 118 S.Ct. 2257; see *Faragher,* 524 U.S., at 803–805, 118 S.Ct. 2275. But it would go too far, we found, to make employers strictly liable whenever a "supervisor" engages in harassment that does not result in a tangible employment action, and we therefore held that in such cases the employer may raise an affirmative defense. Specifically, an employer can mitigate or avoid liability by showing (1) that it exercised reasonable care to prevent and promptly correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities that were provided. *Faragher, supra,* at 807, 118 S.Ct. 2275; *Ellerth,* 524 U.S., at 765, 118 S.Ct. 2257. This compromise, we explained, "accommodate[s] the agency principles of vicarious liability for harm caused by misuse of supervisory authority, as well as Title VII's equally basic policies of encouraging forethought by employers and saving action by objecting employees." *Id.,* at 764, 118 S.Ct. 2257.

*Vance,* 570 U.S. at 429–30.

It seems clear that the first part of the *Faragher-Ellerth* affirmative defense covers defendant's argument that it acted quickly to address the allegations of harassment made by

19

plaintiff in this case.  As quoted above, that first part allows the employer to "mitigate or avoid liability by showing . . . that it exercised reasonable care to prevent and promptly correct any harassing behavior." *Id.*  In this vein, this court reiterates that plaintiff contends that Rebecca Moss told her that she had suffered similar harassment at the hands of Howell.  [Depo. at 84].  The possibility that Howell may have sexually harassed other employees raises questions in this court's mind whether defendant is even able to meet the first part of the *Faragher-Ellerth* standard.[2] *Id.*  Even assuming for the sake of argument that defendant could meet the first part of the *Faragher-Ellerth* defense, there is a second part which must also be met.  Once again, that part requires the defendant to demonstrate, in order to avoid vicarious liability, that "the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities that were provided." *Id.*

As noted previously, it appears to this court that, by setting forth this second part of the *Faragher-Ellerth* affirmative defense, the U.S. Supreme Court was attempting to provide incentives for employers to take sufficient care in the hiring and training of supervisors to ensure that unlawful harassment does not occur in the first place.   By adopting this standard, the Supreme Court also appears to have been trying to provide incentives for plaintiffs to take advantage of any reporting or other procedures provided by their employer, lest they lose their ability to assert a sexual harassment claim.  It appears to this court that plaintiff did, in fact, make prompt use of defendant's reporting procedures in this case, and defendant does not appear to contend otherwise.  As such, it appears to this court that, if Howell was, in fact, plaintiff's supervisor, then defendant would likely fail the second part of the *Faragher-Ellerth* defense and

---

[2] This also raises questions in this court's mind whether defendant could survive summary judgment under *Vance*'s negligence standard, even if Howell were assumed to merely be plaintiff's co-worker and not supervisor.

20

thus be subject to vicarious liability for his action. Of course, it is the inherent nature of vicarious liability that it leaves employers liable even when they personally did nothing wrong, but that is the scheme which the Supreme Court adopted in *Faragher-Ellerth*.

A rather severe complicating factor in this context arises from the fact that certain Fifth Circuit decisions, relied upon by defendant in its brief, have continued to apply pre-*Faragher-Ellerth* case law from this circuit which provided an affirmative defense (even as to harassment by supervisors) for cases where the employer promptly responds to allegations of harassment. In a 2009 decision, for example, Fifth Circuit Judge Edith Jones wrote that:

> "When a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability." *Hockman v. Westward Communications, LLC,* 407 F.3d 317, 329 (5th Cir.2004) (quoting *Nash v. Electrospace Sys., Inc.,* 9 F.3d 401, 402 (5th Cir. 1993)). " 'Prompt remedial action' must be 'reasonably calculated' to end the harassment." *Id.* (quoting *Skidmore v. Precision Printing and Packaging, Inc.,* 188 F.3d 606, 615 (5th Cir.1999)).

*Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 329 (5th Cir. 2009). As quoted above, the origin of this law appears to be the 1993 decision of *Nash v. Electrospace Sys., Inc.,* which preceded the Supreme Court's 1998 decisions in *Faragher* and *Ellerth.*

This court notes that Judge Jones reached a similar result in the 1999 decision of *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 260 (5th Cir. 1999), even though the two other judges on the panel concurred in the result only, thus leaving that opinion (by this court's understanding) without precedential value. Judge Wiener wrote a separate concurring opinion in which he stated that:

> In short, I cannot agree with Judge Jones's conclusion that the Supreme Court's remarkably straightforward and perfectly consistent twin opinions in *Burlington Industries, Inc. v. Ellerth* and *Faragher v. City of Boca Raton* do not control the present case-and, indeed, all cases in which the plaintiff seeks to hold his employer vicariously liable for a supervisor's sexual harassment. As I read them, the Court's two opinions together set forth a comprehensive framework for determining when an employer can be

21

held vicariously liable for sexual harassment by a supervisor-a framework into which the instant case fits comfortably.

Under the *Ellerth* /*Faragher* rubric, an employer is vicariously liable for a supervisor's actionable hostile environment sexual harassment of an employee unless the employer can prove *both* elements of the one and only affirmative defense now permitted by the Court. Those essential elements are defined by the Court as:

(a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) the employee [ ] unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

As it is undisputed that Freeman cannot satisfy the second element of this defense-that Indest unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise-Freeman is vicariously liable to Indest; *unless,* of course, Indest cannot prove that the conduct of the supervisor, Arnaudet, was "sufficiently severe or pervasive" to constitute "actionable" sexual harassment of the hostile work environment kind. For, if Arnaudet's conduct does not rise to the level of actionable sexual harassment, Indest cannot recover from Freeman in agency.

*Indest v. Freeman Decorating, Inc.,* 168 F.3d 795, 796 (5th Cir. 1999)(Wiener concurring).

In taking issue with *Indest*'s departure from the *Faragher-Ellerth* framework, Judge

Wiener further wrote that:

Judge Jones then proceeds to replace, with one of her own, the Supreme Court's balancing of what it identifies as relevant agency principles on the one hand and Title VII policy concerns on the other. After performing her own balancing test in lieu of the Court's, Judge Jones concludes that alone Freeman's quick and adequate response to Indest's equally prompt and adequate reporting of Arnaudet's behavior is sufficient to insulate Freeman from vicarious liability for Arnaudet's harassment of Indest. By thus choosing to disregard totally the Supreme Court's express and carefully explained linking of (1) the employer's prompt and appropriate response with (2) the employee's unreasonable *failure* to invoke the employer's complaint mechanism or otherwise take prompt mitigating action, Judge Jones somehow implicitly concludes that this harassment's "incipient" nature-whatever that is-alleviates Freeman's need to satisfy the second element of *Ellerth* and *Faragher* 's sole surviving affirmative defense, i.e., the requirement to prove that Indest unreasonably failed to take advantage of Freeman's sexual harassment grievance policy.

*Indest,* 168 F.3d at 798.

This court agrees with Judge Wiener that, by adding an additional defense for employers

who respond quickly to allegations of harassment by supervisors, the line of Fifth Circuit case

22

law relied upon by defendant improperly applies pre-*Faragher-Ellerth* case law from this circuit, even though the standards set forth in that earlier case law were implicitly overruled by those two decisions. Once again, *Faragher-Ellerth* is quite clear that, unless the employer can establish both parts of the two-part test quoted above, then it is "vicariously liable" for acts of sexual harassment by its supervisors, with no further affirmative defenses provided (or even hinted at) in the Supreme Court's sexual harassment jurisprudence.

Thus, like Judge Wiener, this court can discern no basis for reading into *Faragher-Ellerth* an "off the menu special" of sorts, whereby the employer is, contrary to the Supreme Court's clear words, not actually vicariously liable at all if the employee promptly "take[s] advantage of any preventive or corrective opportunities provided by the employer" but may, instead, avoid liability by reasonably addressing the harassment after the fact. Such a holding does not serve to supplement *Faragher-Ellerth*, but, rather, purports to directly contradict the Supreme Court's careful formulation in those two decisions. This is evidenced by the aforementioned fact that the requirement that the employer "exercise[] reasonable care to prevent **and correct promptly** any sexually harassing behavior" is already written into the first part of the *Faragher-Ellerth* defense. *Id.* (emphasis added). Once again, however, the Supreme Court in *Faragher-Ellerth* saw fit to add a second requirement to that defense as well, and neither this court nor a federal appellate court of appeals is authorized to read this requirement out of existence.

In light of the foregoing, this court will continue to apply both prongs of the *Faragher-Ellerth* defense in sexual harassment case involving supervisors, just as countless Fifth Circuit cases instruct it to do. Indeed, this court believes that, in this case, it *is* following the overwhelming weight of Fifth Circuit sexual harassment cases, which have simply applied *Faragher-Ellerth* as written. Moreover, to the extent that there exists a small minority of Fifth

23

Circuit cases which have seemed hesitant to apply *Faragher-Ellerth*'s second prong, this court

submits that this fact reflects a conflict among Fifth Circuit decisions, which the *en banc* Fifth

Circuit may wish to address. Pending such clarification, this court will continue to apply

*Faragher-Ellerth* as written, and, having done so in this case, it concludes, for the reasons stated

above, that triable fact issues exist regarding plaintiff's sexual harassment claims.

This court now turns to plaintiff's Title VII retaliation claim, which it regards, much like

her sexual harassment claim, as being potentially viable, although it is unclear at this juncture

how strong this claim will prove to be. In finding plaintiff's retaliation claim to at least

potentially have merit, this court notes that temporal proximity evidence plays a very prominent

role in retaliation cases, although Fifth Circuit cases vary on how close this proximity must be.

The Fifth Circuit noted in one case that:

> In this Circuit, temporal proximity between protected activity and alleged retaliation is
> sometimes enough to establish causation at the prima facie stage. "[T]he protected act and
> the adverse employment action [must be] 'very close' in time" to establish causation by
> timing alone—this court has accepted a two-and-a-half-month gap as sufficiently close in
> one case, and rejected nearly the same timeframe in another We have also accepted gaps
> of less than two months.

*Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948–49 (5th Cir.

2015)(citations omitted).

Regardless of the exact degree of temporal proximity which is required, this court

believes that plaintiff is able to offer quite strong evidence of such proximity in this case.

Indeed, plaintiff reported harassment to management shortly after Howell's alleged actions on

September 20, 2023, and she alleges that her increased work duties began on October 9, 2023.

[Amended EEOC charge at 2]. Temporal proximity aside, this court believes that plaintiff's

retaliation case is assisted by her allegation that some of that retaliation was suffered at the hands

of Howell himself. In this vein, this court notes that defendant represents in its brief that

24

> Shortly after Mr. Howell returned to work, AFI moved Plaintiff to a new assembly line and away from Mr. Howell's line. (Plaintiff Dep. I at 145:4-20).
>
> While Plaintiff worked with Mr. Howell only very briefly following Mr. Howell's return to work (during which time she did not complain of additional harassment), she claims Mr. Howell asked her to put brackets on both sides of the couch (rather than just one side) in retaliation for her report of harassment. (Plaintiff Dep. I at 138:25–139:8).

[Brief at 3]. Defendant thus concedes that its efforts to segregate plaintiff from Howell's supervision were not entirely successful, and this court believes that defendant's failures in this regard serve to assist her retaliation claim.

This court further notes that, from a legal perspective, plaintiff does not face particularly onerous standards in surviving summary judgment on her retaliation claim, since U.S. Supreme Court precedent makes clear that she need only prove that any retaliation she suffered would have been regarded as "materially adverse" by a reasonable employee. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). Considering the summary judgment evidence in the light most favorable to plaintiff, this court believes that most employees would regard significantly increased work duties as "materially adverse," particularly since plaintiff alleges that, in this case, those duties were onerous enough to give her work-related injuries.

This court notes parenthetically that plaintiff may face causation obstacles in attributing her injuries, and her eventual termination based on those injuries, to retaliation. Indeed, it is unclear to this court how strong plaintiff's medical evidence will prove to be, and it has some doubts regarding whether that proof will be strong enough to permit her to recover for her workplace injuries and subsequent termination on the basis of those injuries. Medical proof aside, plaintiff's attempt to establish liability for retaliation in such a manner strikes this court as being quite unconventional, legally-speaking, and it has considerable doubt whether she will be able to recover for her carpal tunnel syndrome (and other workplace injuries) and resulting

25

termination. Still, this court regards plaintiff's proof that she was given significantly increased work duties shortly after her report of harassment as being, potentially, quite viable proof of a "materially adverse" retaliation, although it will wait until trial to determine the extent, if any, to which her retaliation claims have merit.

At this juncture, this court will simply deny defendant's summary judgment motion as to plaintiff's retaliation claim and reserve any remaining issues in this regard to trial. This is consistent with this court's general preference in cases where it has already determined that trial will be required as to one of the plaintiff's claims. Under those circumstances, it generally makes sense to wait until the directed verdict stage of trial to make a final ruling on which claims, if any, should be addressed by the fact-finder. By so doing, this court ensures that, having viewed the evidence at trial, it is able to make a much more informed ruling than if it ruled based solely upon the summary judgment record. Defendant's motion to dismiss plaintiff's retaliation claim on summary judgment will therefore be denied.

It is therefore ordered that defendant's motion for summary judgment is denied.

This, the 1st day of June, 2026.

        /s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI

26